# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TRAVIS C. BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-16-507-SPS |
| | ) |
| COMMISSIONER of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Travis C. Brown, requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born September 23, 1978, and was thirty-six years old at the time of the administrative hearing (Tr. 39). He completed approximately three years of college, and has no past relevant work (Tr. 23, 240). The claimant alleges that he has been unable to work since October 2012, due to agoraphobia, panic disorder with psychotic features, fibromyalgia, and brachial nerve damage (Tr. 239).

## Procedural History

The claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on September 26, 2013. His application was denied. ALJ David W. Engel conducted an administrative hearing and found that the claimant was not disabled in a written opinion dated May 26, 2015 (Tr. 11-25). The Appeals Council denied review, so ALJ Engel's written opinion is the final decision of the Commissioner for purposes of this appeal. *See* 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant retained the residual functional capacity (RFC) to perform a full range of light and sedentary work, except that he was unable to climb ropes/ladders/scaffolds, and work in environments where he would be exposed to unprotected heights and dangerous moving machinery parts. Additionally, the ALJ determined that the claimant was able to interact with co-workers and supervisors under routine supervision; and he could understand,

remember, and carry out simple instructions in a work-related setting, but that he was unable to interact with the general public more than occasionally, either in person or over the phone (Tr. 18). The ALJ concluded that although the claimant had no past relevant work to return to, he was nevertheless not disabled because there was work he could perform in the regional and national economy, *i. e.*, marking clerk, hotel housekeeper, document preparer, and addresser (Tr. 23-24).

**Review**

The claimant contends that the ALJ erred by (i) failing to properly assess the opinions of two treating psychiatrists, and (ii) failing to include all of his impairments in formulating his RFC and in propounding a hypothetical to the vocational expert ("VE") at the administrative hearing, which affected the jobs identified at step five. The Court agrees with the claimant's first contention and finds that the decision of the Commissioner should therefore be reversed and the case remanded for further analysis.

ALJ Engel determined that the claimant had the severe impairments of panic disorder without agoraphobia, generalized anxiety disorder, major depressive disorder, and allergies, as well as the non-severe impairments of hypertension and asthma (Tr. 15). Relevant medical records reflect that in 2012, the claimant was admitted to Vista Health Center for inpatient treatment after escalating depression and anxiety (Tr. 356). He was there for four days, and his discharge diagnosis was panic disorder with agoraphobia, obsessive-compulsive disorder, and major depressive disorder single episode severe without psychotic features with atypical features (Tr. 359). Upon discharge, he was not demonstrating overt panic attacks, but still had "significant anxiety" (Tr. 359).

On March 27, 2012, the claimant's treating psychiatrist, Dr. Robin Ross, M.D., completed a mental RFC assessment, indicating that the claimant had no useful ability to, *inter alia*, maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, or be punctual within customary tolerances; sustain an ordinary routine without supervision; complete a normal workday and workweek without interruptions from psychologically-based symptoms; and work without deterioration or decompensation causing exacerbation of symptoms or adaptive behaviors (Tr. 374).

The claimant continued to receive behavioral health treatment, and notes indicate a recurring diagnosis of panic disorder without agoraphobia, although it was classified as "with agoraphobia" again on July 9, 2012 (Tr., *e. g.*, 391, 420, 427, 458, 523, 568, 620). The panic disorder was characterized as chronic in 2011 (Tr. 467). On October 15, 2012, the claimant reported he had successfully substitute taught for half of one day (Tr. 567). On August 28, 2013, the claimant reported moderate anxiety while driving in Tulsa, but that he had managed it (Tr. 391). The claimant used his medication on an as-needed basis, and the claimant's counselor, Kandra Hughes, LPC, indicated that his anxiety was "somewhat controlled" by medication (Tr. 573). On April 15, 2014, Ms. Hughes noted a negative progression where the claimant had decreased social activities, increased isolation, and decreased physical activity and motivation (Tr. 584). Two months later, she noted increased social activity despite continued anxiety, and that he had started running again (Tr. 586). In September 2014, she noted a mixed assessment with increased irritability but an improved plan for coping (Tr. 588)

Treatment notes from Dr. Jeffery Jenkins, M.D. reflect an assessment of panic disorder, paralyzing anxiety disorder, and chronic low back pain (Tr. 432). Treatment notes further state that the claimant has "unpredictable panic attacks that come out of nowhere" and occur "at least weekly" (Tr. 434). In 2013, Dr. Jenkins completed a mental RFC assessment of the claimant, and reached similar conclusions as Dr. Ross. He, too, indicated that the claimant had no useful ability to function on a sustained basis in the areas of, *inter alia*, maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, or be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; sustain an ordinary work routine without supervision; complete a normal workday and workweek without interruptions from psychologically-based symptoms; and work without deterioration or decompensation causing exacerbation of symptoms or adaptive behaviors (Tr. 531). Dr. Jenkins also indicated that the claimant had some impairment either in reality testing/communication or a major impairment in several areas such as work, school, family relations, judgment, thinking, or mood (Tr. 530). Later treatment notes indicate continued treatment for anxiety and depression (Tr. 594-603). Dr. Jenkins also noted the claimant had a "history of social security disability for his anxiety," which he characterized as "fairly appropriate" (Tr. 605).

The first state reviewing physician determined that the claimant was markedly limited in the three typical areas of ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the general public, and that he was moderately limited in the ability to maintain attention and

concentration for extended periods, and work in coordination with or in proximity to others without being distracted by them (Tr. 125-126). The conclusion was that the claimant could perform simple tasks, relate to supervisors and coworkers on a superficial work basis only, and he could not interact with the general public (Tr. 126). On reconsideration, the reviewing physician found that the claimant was markedly limited in the ability to interact appropriately with the general public, and moderately limited in the ability to maintain attention and concentration for extended periods, work in coordination with or in proximity to others without being distracted by them, complete a normal workday or workweek without interruption from psychologically bases symptoms, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting (Tr. 137-138). He did note that the claimant retained the capacity for concentration, persistence, and pace for one- to three-step instructions for two-hour periods over and eight-hour workday through a week, for forty hours (Tr. 137). This physician concluded that the claimant could perform simple and complex tasks, relate to supervisors and co-workers on a superficial work basis only, and could not interact with the general public (Tr. 138).

In his written opinion, the ALJ summarized the claimant's hearing testimony, his mother and twin brother's hearing testimony, and the medical evidence in the record. As to his mental impairments, the ALJ extensively summarized the basics of the treatment records (Tr. 20-22). Specifically, he noted Dr. Ross's treatment notes, the claimant's 2012 hospitalization, and Dr. Jenkins's treatment notes. Additionally, the ALJ seemed overly concerned with the claimant's marital status, questioning the claimant's credibility based

on his statements thereto, and incorrectly assumed that the claimant's wife, who is *a counselor*, was also acting as his counselor (Tr. 21, ).[2] The ALJ gave great weight to the opinion of the state reviewing physicians because he agreed with it (Tr. 22-23). The ALJ did not explain the discrepancy between assigning great weight to the opinions of the state reviewing physicians which found the claimant could have no contact with the general public, and his own RFC which found the claimant could have occasional contact with the general public (Tr. 18). He then gave little weight to Dr. Jenkins's opinions, stating that they were not consistent with his treatment records or other (unspecified) records (Tr. 23). He provided no assessment of Dr. Ross's opinion.

On appeal, the claimant contends that the ALJ improperly assessed both Dr. Ross's and Dr. Jenkins's opinions, and the Court agrees. The medical opinions of treating physicians are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "consistent with other substantial evidence in the record." *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003). When a treating physician's opinion is not entitled to controlling weight, the ALJ must determine the proper weight. The pertinent factors include the following: (i) the length of the treatment

---

[2] At the hearing, ALJ Engel also challenged the claimant's mother as to the claimant's official diagnosis with regard to his panic disorder. Her actual testimony was that she thought he was "partial agoraphobic," because some days he cannot leave the house (Tr. 70), and the ALJ accused her of "diagnosing something the doctors aren't" and he continued to interrupt her while she tried to answer him. This, of course, ignores the actual diagnoses of panic disorder with agoraphobia that are present in the record, as cited above, and further ignores the fact that the claimant's mother was a lay person called to testify about her observations, not make an official diagnosis (Tr. 71-72).

relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins*, 350 F.3d at 1300-1301, *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001). If the ALJ decides to reject a treating physician's opinion entirely, he is required to "give specific, legitimate reasons for doing so." *Id.* at 1301 [quotations and citations omitted]. In sum, it must be "clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight." *Id.* at 1300, *citing* Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The ALJ was required to evaluate for controlling weight any opinions as to the claimant's functional limitations expressed by his treating physicians. Although the ALJ noted the proper analysis in step four (Tr. 18), he failed to properly apply it in this case. The ALJ's assessment was improper because he appeared to adopt the findings of the state reviewing physicians while wholly ignoring Dr. Ross's and summarily dismissing Dr. Jenkins's. This includes a failure to account for Dr. Ross's and Dr. Jenkins's *consistent* opinions, along with consistent treatment records from the claimant's counselor Ms. Hughes, including treatment records indicating that the claimant had continued panic attacks and persistent depression and anxiety even when on his medications. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and

choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-386 (7th Cir. 1984). This was a significant omission here because these limitations discussed directly impact the claimant's ability to perform work. Moreover, it indicates that the ALJ did not conduct a proper longitudinal assessment of the claimant's impairments but focused on times when exams had more positive results and ignored the times when the record reflected decompensation. 20 C.F.R. § 404.1520a(c)(1) ("Assessment of functional limitations . . . requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation.").

Additionally, the ALJ seemed intent on disproving that agoraphobia was a facet of the claimant's panic disorder, rather than assessing the actual effects of the established severe mental impairment of panic disorder. Indeed, the ALJ devoted much of his discussion at step four to questioning his determination at step two, *i. e.*, the severity of these impairments, and further finding him not credible because of, *inter alia*, his reports regarding his marital status. Instead, the ALJ should have explained why the claimant's severe mental impairments did not call for corresponding limitations in the RFC. *See Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as the significantly probative evidence that he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir 1984).

Because the ALJ failed to properly analyze evidence of record as to the claimant's mental limitations, the Commissioner's decision must be reversed and the case remanded

for further analysis by the ALJ. If such analysis results in adjustments to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 27th day of March, 2018.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**